# IN THE DISTRICT COURT OF THE UNITED STATES
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# 1:12cr128

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | MEMORANDUM AND |
| vs. ) | RECOMMENDATION |
| ) | |
| LAWRENCE DOE, JR., ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

**THIS MATTER** is before the Court upon Defendant's "Motion to Suppress and Memorandum in Support." (#13) The Government has filed a response entitled "Government's Opposition to Motion to Suppress." (#14) The undersigned conducted a hearing and heard evidence from the Government and Defendant on April 4, 2013. Having carefully considered Defendant's motion, and the Government's response, the Court enters the following findings, conclusions and recommendation.

## FINDINGS AND CONCLUSIONS

### I. Procedural Background

Defendant is charged in a one count bill of indictment (#1), which alleges that on or about August 10, 2012, Defendant, having been convicted of crimes punishable by terms of imprisonment exceeding one year, did knowingly possess a

1

firearm which had been shipped or transported in interstate or foreign commerce in violation of 18 U.S.C. § 922(g)(1).  Defendant filed his Motion to Suppress and Memorandum in Support (#13) on February 28, 2013.  The Government filed it's response (#14) on March 14, 2013, and the Court set the matter for hearing on April 4, 2013.

## II. Factual Background

### A. Facts[1]

On Friday, August 10, 2012, Sgt. Nicholas C. Stott, a sworn law enforcement officer in the employment of the Town of Columbus, North Carolina Police Department, was conducting stationary traffic enforcement on Interstate 26 as it traveled through the Town of Columbus.  Officer Stott observed a 2001 Toyota Camry vehicle traveling eastbound on Interstate 26 at a speed he estimated to be 120 miles per hour in an area in which the speed limit was 65 miles per hour.  Sgt. Stott followed the vehicle and initiated a traffic stop.  After the vehicle stopped, Sgt. Stott approached the passenger side of the vehicle and Officer Benjamin Page approached the driver's side.  As Sgt. Stott approached the rear of the vehicle, the Defendant, who was a passenger in the vehicle, threw a condiment package out of the passenger window and on to the grass shoulder of the road.  Sgt. Stott then asked Defendant to step out of the Toyota vehicle.  As Defendant

---

[1] The Court takes the factual background in large part from the search warrant application. (Gov. Exhibit 1)

stepped out of the vehicle, Sgt. Stott saw a barrel of a firearm under Defendant's right foot. After Defendant stepped out of the Toyota, Sgt. Stott seized the firearm and put it in his patrol vehicle. The firearm was a Smith & Wesson model 19-3 .357 caliber magnum revolver which was loaded with six rounds of .38 caliber special ammunition.

Sgt. Stott spoke about the firearm with the operator of the Toyota Camry, who was Janial Rashuadd Garvin. Mr. Garvin denied having any knowledge of the firearm. Sgt. Stott then asked Defendant about the firearm and Defendant stated he did not know anything about the firearm, even though Sgt. Stott had seen Defendant's foot resting upon the weapon. Sgt. Stott then checked the criminal records of the occupants of the vehicle, which showed Defendant had multiple felony convictions. The check also showed that the firearm was possibly stolen.

Sgt. Stott requested assistance from another officer described as "Officer Case". Case spoke to a female passenger who had been sitting in the rear passenger seat of the Toyota vehicle. The passenger gave consent to search the vehicle. In the trunk of the Toyota vehicle the officers located numerous bags, some of which contained bolt cutters, hand tools, and black gloves. Other bags contained numerous silver coins and coin sets. All three of the occupants of the vehicle denied ownership of the coins and stated they did not belong to them. Under the bags, the officers found a 2012 Honda motorcycle, which had been

reported as being stolen from Georgetown, KY on August 8, 2012. The operator of the Toyota vehicle, Mr. Garvin, stated he had bought the motorcycle "from a military guy in Kentucky."

**B. The Search Warrant Application**

On August 13, 2012, Sgt. Stott made an application to a North Carolina state magistrate for a search warrant to search the 2001 Toyota Camry and to further search a "silver and black Samsung cell phone, Verizon Wireless, phone number 919-660-1029, belonging to Lawrence Elijah Doe, Jr., to include any text messages, photographs, video, call logs, or other digital/electronic media contained within the cell phone."

In the application, Sgt. Stott described that he wished to seize from the cell phone, among other items:

4. Still images, photographs, and/or video

5. Text messages, call logs, and/or digital media

Under description of the crime, Sgt. Stott listed the following:

1. Possession of Stolen Property

2. Possession of a Firearm by a Felon

3. Possession of Burglary Tools

The application was signed and sworn to by Sgt. Stott before the magistrate on August 13, 2012. The application, attached affidavit and warrant was placed

into evidence by the Government as "Government Exhibit 1."

In the affidavit, attached to the application for the search warrant, Sgt. Stott set forth his training and experience. He averred he is a graduate of the University of North Carolina at Chapel Hill having received a Bachelor of Arts degree in Peace, War and Defense. He is also a graduate of the Town of Chapel Hill, North Carolina Police Academy. He has been a sworn law enforcement officer since December of 2006. He was a deputy in the Polk County Sheriff's Office and joined the Columbus Police Department in 2009. After graduating from basic law enforcement training he has received over 2,400 hours of training, including in-service training and continuing education, in the field of law enforcement. He further averred he has completed the Traffic Enforcement and Investigation Certificate Program and the Criminal Investigations Certificate Program from the North Carolina Justice Academy. Finally, Sgt. Stott averred that he had conducted numerous investigations resulting in arrest and prosecutions for misdemeanor and felony cases.

In the affidavit, Sgt. Stott set forth the facts of the arrest of the Defendant and included in the affidavit the following:

### Paragraph Four

Through my training and experience, I know that individuals often take pictures, videos, send text messages, and other uses of digital media which will implicate or document crimes in which they take

part of. It is through this training experience that I believe such digital media will be present in the cellular telephone of Lawrence Elijah Doe, Jr. to show that he owned or possessed the firearm located under his foot on more than one occasion, as well as evidence of the stolen motorcycle which was recovered.

The state magistrate issued the search warrant requested by Sgt. Stott and the Defendant now moves to suppress the results of Sgt. Stott's search of the Defendant's cellular telephone.

### C. Testimony of Sgt. Stott

Sgt. Stott was called as a witness by Defendant. (T. p. 10.) Sgt. Stott testified that on August 10, 2012, he arrested Defendant and on August 13, 2012, he applied for a search warrant for Defendant's cell phone. (T. pp. 10-11.) During training Sgt. Stott received at the North Carolina Justice Academy, Central Piedmont Community College, and training by the United States Attorney's Office, and also due to his own experience in investigations, Sgt. Stott has knowledge that defendants will take photographs and use digital media which documents their crimes. (T. pp. 11-12, 16.) Sgt. Stott searches either with consent or by the use of a search warrant the cell phone of every person that he arrests on a charge involving a firearm. (T. p. 12.) In his opinion, the cell phones of a majority of these defendants contain photographs that relate to their crimes. (T. p. 12.) The types of cases in which Sgt. Stott would want to examine the contents of a cellular phone includes stolen property, controlled substances, and firearms. (T. pp. 21-

22.) Sgt. Stott has found that persons often use their cell phone to take photographs of the firearms and to pose with the weapon. (T. p. 22.) In his experience, Sgt. Stott has found that in 75% of the cases involving drugs or firearms a defendant who has a cell phone has used that cell phone to photograph either the drugs or the firearm. (T. p. 22.)

## III. Legal Standard

### A. Standard Applicable to a Motion to Suppress of a Search Warrant

The Fourth Amendment to the United States Constitution provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. "This fundamental right is preserved by a requirement that searches be conducted pursuant to a warrant issued by an independent judicial officer." California v. Carney, 471 U.S. 386, 390, 105 S.Ct. 2066 (1985). When a district court reviews a search warrant issued by a magistrate or a superior court judge, the judicial officer's determination of probable cause is entitled to great deference. United States v. Wellman, 663 F.3d 224, 228 (4th Cir. 2011); United States v. Hodge, 354 F.3d 305, 309 (4th Cir. 2004). "Thus, 'the duty of a reviewing court is simply to ensure that the magistrate had a substantial basis for concluding that probable cause existed.'" Hodge, 354 F.3d at 309 (quoting Illinois v. Gates, 462 U.S. 213,

238-39, 103 S.Ct. 2317 (1983)). Moreover, the Court must limit its review to considering "only the information presented to the magistrate who issued the warrant." United States v. Wilhelm, 80 F.3d 116, 118 (4th Cir. 1996).

In Hodge, the United States Court of Appeals for the Fourth Circuit explained the concept of probable cause necessary for the issuance of a search warrant:

> As the Supreme Court has noted, "probable cause is a fluid concept---turning on the assessment of probabilities in particular factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." Id. at 232, 103 S.Ct. 2317. Although noting that probable cause is not susceptible to precise definition, the Supreme Court has described it as "existing where the known facts and circumstances are sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found." Ornelas v. United States, 517 U.S. 690, 696, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996); see also Gates, 462 U.S. at 238, 103 S. Ct. 2317 (explaining that a probable cause inquiry involves a determination of "whether, given all the circumstances…, there is a fair probability that contraband or evidence of a crime will be found in a particular place").

354 F.3d at 309; see also Wellman, 663 F.3d at 228 ("the relevant question is whether the known facts and circumstances were sufficient such that a person of reasonable prudence could conclude that the described evidence would be found in that particular place."). As the Fourth Circuit and Supreme Court have explained, there is no bright-rule as to what specific information a search warrant application must include, and officers may decide to include a variety of information when submitting an application to a magistrate. See Wellman, 663 F.3d at 228. Instead,

the Court must review the application in its entirety and determine whether it provided sufficient information to support the issuance of the search warrant in question.  Id.

> **B. Standard Applicable to the "Good Faith Exception" established by the United States Supreme Court in United States v. Leon, 468 U.S. 897 (1984)**

The Fourth Circuit addressed Leon at length in United States v. Williams, 548 F.3d 311 (4thCir. 2008).

> As the Supreme Court instructed in Leon, "a court should not suppress the fruits of a search conducted under the authority of a warrant, even a 'subsequently invalidated' warrant, unless 'a reasonable well trained officer would have known that the search was illegal despite the magistrate's authorization.'" United States v. Bynum, 293 F.3d 192, 195 (4th Cir. 2002) (quoting Leon, 468 U.S. at 922 n. 23, 104 S.Ct. 3405).  The Leon Court explained "that the deterrence purpose of the exclusionary rule is not achieved through the suppression of evidence obtained by 'an office acting with objective good faith' within the scope of a search warrant issued by a magistrate."  United States v. Perez, 393 F.3d 457, 461 (4th Cir. 2004) (quoting Leon, 468 U.S. at 920, 104 S.Ct. 3405).  "Hence, under Leon's good faith exception, evidence obtained pursuant to a search warrant issued by a neutral magistrate does not need to be excluded if the officer's reliance on the warrant was 'objectively reasonable.'"  Id. (quoting Leon, 468 U.S. at 922, 104 S.Ct. 3405).
>
> The Leon Court admonished that searches conducted "pursuant to a warrant will rarely require any deep inquiry into reasonableness, for a warrant issued by a magistrate normally suffices to establish that a law enforcement officer has acted in good faith in conducting the search."  468 U.S. at 922, 104 S.Ct. 3405 (internal quotation marks omitted).  An officer's reliance on a warrant would not qualify as "objectively reasonable," however, in the following four circumstances:

First, where "the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth," Id. at 923, 104 S.Ct. 3405;

Second, where "the magistrate acted as a rubber stamp for the officers and so 'wholly abandoned' his detached and neutral 'judicial role,'" Bynum, 293 F.3d at 195 (quoting Leon, 468 U.S. at 923, 104 S.Ct. 3405);

Third, where a supporting affidavit is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," Leon, 468 U.S. at 923, 104 S.Ct. 3405 (internal quotation marks omitted); and

Fourth, where "a warrant is so facially deficient--- *i.e.*, in failing to particularize the place to be searched or the things to be seized---that the executing officers cannot reasonably presume it to be valid," Id.

"In any of these four circumstances, then, the Leon good faith exception does not apply." Perez, 393 F.3d at 461.

Williams, 548 F.3d at 317-318.

## IV. Discussion

### A. The Search Warrant

An examination of the facts and information contained in the application for the search warrant for the cellular telephone belonging to Defendant shows the information provided was sufficient to support the issuance of the search warrant. Although Defendant alleges the application and the supporting affidavit are conclusory, the information in the application, when reviewed in its entirety,

supports the state magistrate's probable cause finding. The affidavit details the history of the investigation, how Sgt. Stott saw the speeding Toyota vehicle in which Defendant was riding as a passenger, and how the vehicle was traveling at a speed of 120 m.p.h. in a 65 m.p.h. restricted zone. The application further shows that he immediately stopped the vehicle and describes how he saw the firearm underneath Defendant's foot when Defendant exited the vehicle. Sgt. Stott details in his affidavit that Defendant then denied knowledge of the firearm even though his foot had been resting upon the weapon. Sgt. Stott further describes how his further investigation revealed that Defendant was a "multiple time convicted felon." Sgt. Stott then avers that through his training and experience he knows that individuals often take pictures, videos, and send text messages that will implicate or document the crimes that they commit. Sgt. Stott avers that "digital media will be present in the cellular telephone of Lawrence Elijah Doe, Jr. to show that he owned or possessed the firearm located under his foot on more than one occasion." In short, the application provided sufficient information for the state magistrate to find probable cause and to support the issuance of the search warrant for the cellular telephone. See Wellman, 663 F.3d 228. That is all that is required.

Defendant's attempt to invalidate the search warrant by focusing on a narrow, one paragraph statement in the application, while wholly ignoring the totality of the remainder of the application, is contrary to the law in this circuit and

insufficient to support his contention that the search warrant was unconstitutional at the time it was issued. A reading of the remainder of the affidavit shows a detailed description of the events that points toward the need of a search of the contents of the cellular phone for additional evidence that would either support the allegations that Defendant possessed the firearm or might even defeat those allegations.

Defendant's argument that in his affidavit Sgt. Stott failed to include specific examples of his training and experience which caused him to develop his opinion concerning the information contained in cellular telephones is unavailing. Sgt. Stott is not required to include every single detail known to him in the application. Although the inclusion of the degree of training and his past experience concerning the discovery of evidence in an examination or other information contained in a cellular telephone might have aided in the probable cause determination, "officers legitimately may choose to include a variety of information when submitting a search warrant application." Id.

Language similar to that contained in the application for the search warrant in question was approved by the Fourth Circuit Court of Appeals in United States v. Arellano, 410 F. App'x 603, 2011 WL 397736 (4th Cir. 2011), in an unreported

12

decision.² The facts in Arellano showed that as a result of a traffic violation offense, a vehicle was stopped, which was found to be operated by the defendant. The officer that stopped the vehicle defendant was driving seized from defendant a cellular telephone and thirty business cards for a Latino business. During a search of the vehicle, the officer found envelopes containing social security cards and State of Virginia identification cards, all of which he suspected were fraudulent. Over two months later, the officer requested a search warrant to search Defendant's cell phone. The affidavit in support of the application explained that cellular telephones commonly contained text messages, phone numbers, contacts, personal calendars, dates, and other electronic records that would provide evidence of the defendant's alleged unlawful activity. The Court of Appeals ruled that the affidavit in support of the search warrant containing this statement provided probable cause for the issuance of the search warrant for the contents of the cellular telephone. A comparison of the information provided by Sgt. Stott with the affidavit filed by the stopping officer in Arellano shows that probable cause was shown in each case for the issuance of the search warrant.

Again, the question is not whether some additional information could have been included, whether the information could have aided in the state magistrate's determination, or even whether one specific factor considered in isolation-such as

---

² Unreported decisions do not have precedential value.

the training and experience concerning evidence enclosed in a search of a cell phone-supports the warrant. Rather, the pertinent question is whether the application in its <u>entirety</u> provided sufficient information to support the issuance of the search warrant for the contents of the cellular phone. See <u>Wellman</u>, 663 F.3d at 228. When considered in its <u>entirety</u> as opposed to a piecemeal application as advocated by Defendant, and recognizing the deference to be shown to the state magistrate's determination, <u>Hodge</u>, 354 F.3d at 309, the Court finds that the known facts and circumstances were sufficient to allow a person of reasonable prudence to conclude that evidence would be found in an examination of Defendant's cell phone. <u>Wellman</u>, 663 F.3d at 228. Accordingly, the Court recommends that the District Court **DENY** Defendant's Motion to Suppress (#13).

    **B.**    **The Good Faith Exception**

In its brief, the Government contends that even if the Court were to conclude that probable cause for the issuance of the search warrant was not established or set forth in the application for the search warrant filed by Sgt. Stott, that the good faith exception applies. In <u>Leon</u>, the United States Supreme Court determined that a Court should not suppress the fruits of a search conducted pursuant to a search warrant, "even a subsequently invalided" warrant, unless a reasonably well trained officer would have known the search was illegal despite the issuance of the warrant. 468 U.S. at 922. The Supreme Court set forth four circumstances in

which an officers' reliance on a search warrant would not be justified. Id. at 923. In regard to the Motion to Suppress by Defendant Doe, the Defendant does not contend in his brief or in the evidence presented at the hearing that Sgt. Stott provided false information in his affidavit. There appears to be no allegation that the state magistrate abandoned his neutral judicial role in issuing the search warrant. Moreover, the supporting affiant filed by Sgt. Stott is not lacking in facts alleging probable cause to render Sgt. Stott's reliance upon the warrant entirely unreasonable. Finally, the warrant described with particularity the place to be searched and the things to be seized. The application specifically sought permission to search "a silver and black Samsung cellular telephone, Verizon Wireless carrier, phone number 912-660-1029, belonging to Lawrence Elijah Doe, Jr. to include any text messages, photographs, video, call logs, or other digital/electronic media contained within the cell phone." The warrant was not so facially deficient that the executing officer could not reasonably presume that it was valid. Williams, 548 F.3d at 318.

In Williams, the Fourth Circuit found that almost identical language contained in an affidavit filed in support of an application for a search warrant, as that filed by Sgt. Stott, provided sufficient indicia of probable cause to apply the good faith exception set forth in Leon. In Williams, the affidavit stated:

> Your Affiant knows based on his training and experience that drug

dealers tend to maintain quantities of narcotics, firearms and proceeds from drug sales and records of drug transactions in their houses…for safekeeping. Your Affiant knows based on his training and experience that drug dealers often utilize safes and other locked containers in their residence to secure quantities of drugs, firearms and proceeds from drug sales…Your Affiant has also learned that narcotic dealers tend to "stash" quantities of narcotics, monies, and handguns in their houses. (P. 314.)

Approving this language, the Court of Appeals reversed the District Court's Order granting a motion to suppress. Although the application in Williams was to request a search warrant to search a dwelling house, such language was very similar to the language used by Sgt. Stott in regard to his application for the search of the cellular telephone of Defendant Doe.

The undersigned finds that Sgt. Stott's reliance on the search warrant was reasonable and in good faith and further finds that the contentions of Defendant have no merit and will recommend that the motion of Defendant additionally be denied on the basis set forth in Leon.

## RECOMMENDATION

**IT IS, THEREFORE, RESPECTFULLY RECOMMENDED** that Defendant's Motion to Suppress (#13) be **DENIED.**

Signed: June 21, 2013



Dennis L. Howell
United States Magistrate Judge

**Time for Objections**

The parties are hereby advised that, pursuant to 28, United States Code, Section 636(b)(1)(C), and Rule 72, Federal Rules of Civil Procedure, written objections to the findings of fact, conclusions of law, and recommendation contained herein must be filed within **fourteen (14)** days of service of same. **Responses to the objections must be filed within fourteen (14) days of service of the objections.** Failure to file objections to this Memorandum and Recommendation with the district court will preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140 (1985), reh'g denied, 474 U.S. 1111 (1986); United States v. Schronce, 727 F.2d 91 (4th Cir.), cert. denied, 467 U.S. 1208 (1984).