# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# CRIMINAL CASE NO. 1:12-cr-00128-MR-DLH

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> ) <br> LAWRENCE DOE, JR., ) <br> ) <br> Defendant. ) <br> _____ ) | **MEMORANDUM <br> AND OPINION** |

**THIS MATTER** is before the Court for resolution of the Defendant's Motion to Suppress [Doc. 13], and the Defendant's Objections [Doc. 20] to the Magistrate Judge's Memorandum and Recommendation [Doc. 19]. For the reasons that follow, this Court will overrule the Defendant's Objections and accept Magistrate Judge Howell's recommendation that the Defendant's Motion to Suppress be denied.

## PROCEDURAL BACKGROUND

On December 4, 2012, the Defendant was charged in a Bill of Indictment with a single count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). [Doc. 1]. The Defendant made his initial appearance on January 28, 2013. The Court conducted Defendant's

arraignment and detention hearing on January 30, 2013, following which the Defendant was detained [Docs. 6, 8] and his case was placed on the March 4, 2013, calendar for trial.  The Defendant then moved for a continuance, citing the significant amount of discovery received from the Government.  [Doc. 11].  The Court granted this motion on February 14, 2013, and continued the case to the May 6, 2013, term.  [Doc. 12].

On February 28, 2013, the Defendant filed a Motion to Suppress. [Doc. 13].  The Government filed a Response to the Defendant's Motion on March 14, 2013.  [Doc. 14].  The Magistrate Judge held a suppression hearing on April 4, 2013, and thereafter issued his Memorandum and Recommendation [Doc. 19] on June 21, 2013, concluding that Defendant's suppression motion be denied.  On July 5, 2013, the Defendant filed his Objection to Memorandum and Recommendations.  [Doc. 20].  The Defendant's Motion to Suppress and Objection to Memorandum and Recommendations are now ripe for the Court's consideration.

## STANDARD OF REVIEW

Since the Defendant has raised various objections to the Magistrate Judge's Memorandum and Recommendation, the Court will review the Magistrate Judge's proposed findings and conclusions *de novo.*  28 U.S.C. § 636(b)(1); Fed.R.Crim.P. 59(b)(3).

## FACTUAL BACKGROUND

The facts leading to the Defendant's arrest are not in dispute. The Court sets forth below officer Nicholas Stott's factual recitation contained in the search warrant application at issue in this case. The search warrant application was introduced without objection as Government's Exhibit 1 at the Defendant's suppression hearing.

### Paragraph One

> That Sergeant Nicholas C. Stott, hereinafter referred to as affiant, of the Columbus Police Department has been a sworn Law Enforcement officer since December 2006. Prior to joining the Columbus Police Department in 2009, affiant served as a deputy at the Polk County Sheriff's Office in the positions of patrol and investigations. Affiant is still a reserve deputy with the Polk County Sheriff's Office. The affiant earned a Bachelor of Arts degree from the University of North Carolina at Chapel Hill in Peace, War and Defense, with a concentration of National & International Defense and Security and minors in History and Asian Studies. Affiant graduated from the Chapel Hill Police Academy. The affiant has since received numerous additional Law Enforcement trainings from the North Carolina Justice Academy as well as various other federal, state and local accredited institutions. Since graduating from Basic Law Enforcement Training, affiant has completed over 2,400 hours of training, in-service and continuing education in the law enforcement field. Affiant is a certified Senior Interdictor through the National Criminal Enforcement Association. Affiant has completed the Traffic Enforcement and Investigation Certificate Program and the Criminal Investigations Certificate Program through the North Carolina Justice Academy. Affiant has conducted numerous investigations resulting in the arrest and successful prosecution of misdemeanor and felony cases.

## Paragraph Two

On Friday, August 10, 2012, I was conducting stationary traffic enforcement on Interstate 26 east bound in the area of the 66 mile marker. I observed a vehicle traveling east bound in the left lane at speed I estimated to be 120 mph in the 65 mph zone. I clocked the vehicle at 110 mph. The vehicle was a 2001 Toyota Camry, blue in color. I pulled out and initiated a vehicle stop. There was a lot of movement inside the vehicle as it pulled over. Officer Benjamin Page approached the driver's side of the vehicle and I approached the passenger side of the vehicle. Officer Page informed the driver, Jamal Rashuadd Garvin of his name, department and reason for the stop. As I was standing at the rear of the vehicle, I observed the passenger, identified as Lawrence Elijha Doe Jr., throw a McDonald's "sweet and sour" dipping sauce packet out the passenger window and into the grass shoulder. I approached Mr. Doe and asked if there was any reason for him littering and he did not answer. I asked him to step out of the vehicle. As Mr. Doe stepped out of the vehicle, I observed the barrel of a firearm under his right foot. I asked Mr. Doe to step to the rear of the vehicle with Officer Page and I secured the firearm in my patrol vehicle. The firearm was a Smith & Wesson Model 19-3 .357 magnum revolver, loaded with six rounds of .38 Special lead round nose, serial number 2K5510. I spoke with Mr. Garvin and asked him about the firearm. Mr. Garvin denied knowing anything about the weapon. I observed the odor of an alcoholic beverage about Mr. Garvin's breath. I asked Mr. Doe about the pistol and he first ignored me, then acted surprised and said he did not know anything about the firearm, even though his foot was resting on it. I checked all occupants through DCI and NCIC, discovering that Mr. Doe was a multiple time convicted felon. The firearm returned with a possible stolen hit, with one character off in the serial number. I called for Officer Case to come assist me on the stop.

## Paragraph Three

Officer Case spoke with Ms. Arnold who gave consent to search the vehicle, in addition to the probable cause of the

concealed handgun and possession of a firearm by a felon. Officer Case and I searched the vehicle. In the rear seat where Ms. Arnold was sitting, we located a McDonald's cup which contained an alcoholic beverage. Ms. Arnold admitted that it was hers, which she had been drinking, and that it contained gin. In the trunk of the vehicle, we located numerous bags, some of which contained bolt cutters, hand tools, black gloves, as well as numerous silver coins and coin sets. Everyone disclaimed ownership of the coins and stated they did not belong to them. Under the bags, we located a white and red motorcycle. It was a 2012 Honda CRF VIN: JH2AE0312CK100739. I ran the VIN through the communications center and it returned stolen from Georgetown, Kentucky on 8/8/2012. I asked Mr. Garvin about the vehicle and he stated it was his, that he bought it in Kentucky from a military guy and he was giving it to his cousin. I asked Mr. Doe about the motorcycle and he stated that Mr. Garvin bought it from a military man in Kentucky and that he paid $150 for it. Mr. Doe could hear Mr. Garvin's response when he gave it earlier. All three occupants were arrested. The vehicle has been locked in a secured impound facility since it was towed from the roadway.

## Paragraph Four

Through my training and experience, I know that individuals often take pictures, videos, send text messages, and other uses of digital media which will implicate or document the crimes in which they take part of. It is through this training and experience that I believe such digital media will be present in the cellular telephone of Lawrence Elijha Doe Jr. to show that he owned or possessed the firearm located under his foot on more than one occasion, as well as evidence of the stolen motorcycle which was recovered.

## Paragraph Five

Based on my training experience and study, with the factual information of the above statements, I believe the evidence subject to seizure in this affidavit will be found at the location

described, and I respectfully petition the court for the issuance of this search warrant.

[Doc. 13-1 at 4-6].

The search warrant application also specifically lists the 2001 blue Toyota Camry automobile and the Defendant's black Samsung cellular telephone bearing number 912-660-1029 as the property to be searched. [Id. at 3]. Finally, the search warrant application sets forth the evidence to be seized and the alleged crimes committed in the following manner:

Description of Evidence to be Seized:

1. Any property determined to be stolen
2. Papers of identification
3. Items or articles of personal property tending to show ownership, dominion, or control of the premises
4. Still images, photographs and/or videos
5. Text messages, call logs and/or other digital media
6. Records of financial institution transactions
7. Firearms and/or ammunition
8. Cellular telephones
9. Evidence of any other crime which may be located

Description of Crime:

1. Possession of Stolen Property
2. Possession of a Firearm by a Felon
3. Possession of Burglary Tools

[Doc. 13-1 at 3].

On April 4, 2013, the Magistrate Judge conducted a suppression hearing and, out of an abundance of caution, allowed officer Stott to be

6

called as a witness by the Defendant. Officer's Stott's testimony is summarized in the Magistrate Judge's Memorandum and Recommendation [Doc. 19 at 6-7]. The Court has reviewed the audio transcript of the Defendant's suppression hearing and finds that Magistrate Judge Howell's summary recitation of the same, contained in his Memorandum and Recommendation, is accurate and thus will not repeat it here.

## ANALYSIS

Federal caselaw is replete with decisions addressing a defendant's Fourth Amendment challenge to law enforcement's warrantless search and seizure of evidence. Many of these courts' decisions have admonished the police prospectively to seek a warrant from a neutral judicial officer before conducting any search as the better course of business. In this case, officer Stott, who arrested the Defendant, obtained a warrant to search the vehicle in which the Defendant was a passenger, as well as the cellular telephone possessed by the Defendant, following the Defendant's arrest. Having complied with the dictates of the Fourth Amendment, the officer's actions in this case were lawful.

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause,

supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. The peoples' right so secured "is preserved by a requirement that searches be conducted pursuant to a warrant issued by an independent judicial officer." California v. Carney, 471 U.S. 386, 390 (1985).

After arresting the Defendant, Stott obtained a search warrant to search Defendant's cell phone[1] and the car in which he was a passenger. The Defendant contests the validity of the search warrant [Doc. 13] and the Magistrate Judge's analysis upholding the warrant as a valid basis for Stott to search both the car and Defendant's cell phone [Doc. 20]. When a district court is called upon to examine a challenged search warrant, the duty of the reviewing court is simply to ensure the magistrate had a substantial basis for concluding that probable cause existed. Illinois v. Gates, 462 U.S. 213, 238-9 (1983) (citation omitted). Reviewing courts apply the "totality of circumstances" test and, "[i]n dealing with probable cause, as the very name implies, [the courts] deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians,

---

[1]This phone, as conceded by the Defendant, was a "Samsung telephone belonging to Mr. Doe." [Doc. 20 at 1].

act." Id. at 230-1 (citation omitted). Finally, as Defendant correctly points out [Doc. 13 at 2], the court reviewing a search warrant application for probable cause must consider only the information presented to the magistrate who issued the warrant.[2] United States v. Blackwood, 913 F.2d 139, 142 (4th Cir. 1990).

From the moment Stott spotted a car he estimated to be traveling at 120 miles per hour, to the arrest of its three occupants, Stott gathered, and later recorded in his warrant application, a surfeit of facts amply supporting a substantial basis of probable caused permitting the later search of that vehicle and Defendant's cell phone. The Court highlights these facts in the following analysis.

After observing the Camry's speed, Stott "clocked" the car at 110 miles per hour and then proceeded to pull it over. [Doc. 13-1 at 4]. "There was a lot of movement inside the vehicle as it pulled over." Stott and officer Page approached the car, Stott on the passenger's side and Case on the driver's side. [Id.]. Before Stott arrived at the passenger's door, the front-seat passenger drew attention to himself by throwing a piece of trash

---

[2]Because the Defendant has never contended, nor made a preliminary showing, that Stott included in the warrant application any false statement knowingly and intentionally, or with reckless disregard for the truth, Stott's testimony at the Defendant's suppression hearing will not be considered by the Court herein. Franks v. Delaware, 438 U.S. 154, 155 (1978).

9

out of the passenger window in Stott's presence. [Id.]. When Stott asked the Defendant the common-sense question of what prompted the Defendant to litter, the Defendant said nothing. [Id.]. Stott then asked the Defendant to exit the vehicle, a request the Constitution permits him to make. Maryland v. Wilson, 519 U.S. 408, 414-5 (1997) (a passenger may be required to exit a vehicle during a routine traffic stop even without reasonable suspicion that the passenger poses a safety risk). Accord, United States v. Hampton, 628 F.3d 654, 658 (4th Cir. 2010) (rejecting defendant's argument that Arizona v. Gant, 556 U.S. 332 (2009), implicitly over ruled Wilson).

The Defendant complied with Stott's request to get out of the car. As the Defendant was stepping out of the Camry, Stott "observed the barrel of a firearm under his right foot." [Doc. 13-1 at 4]. Officer Stott secured the loaded Smith & Wesson .357 magnum in his patrol vehicle and then asked both the driver, Mr. Gavin, and the Defendant about the firearm. [Doc. 13-1 at 5]. Mr. Gavin, who smelled of alcohol and admitted he had been drinking, told Stott he did not know anything about the gun. Turning to the Defendant, Stott "asked Mr. Doe about the pistol and he first ignored me, then acted surprised and said he did not know anything about the firearm, even though his foot was resting on it." [Id.]. Stott conducted a computer

record check on all the occupants of the Camry and learned that the Defendant had multiple felony convictions. He then called officer Case for assistance. [Id.]

When Case arrived, he spoke with the rear-seat passenger, Ms. Arnold, and asked her for permission to search the car. She consented to the search of the Camry. [Doc. 13-1 at 5]. The first thing the officers seized was "a McDonalds cup which contained an alcoholic beverage." [Id.]. Ms. Arnold admitted the drink was hers and that it contained gin. [Id.]. The officers then opened the trunk and located "numerous bags, some of which contained bolt cutters, hand tools, black gloves, as well as numerous silver coins and coin sets." [Id.]. All of occupants of the car disclaimed ownership of the coins. [Id.].

Under the bags, the officers seized a small red and white Honda motorcycle. [Doc. 13-1 at 5]. Stott "ran the VIN through the communications center and it returned stolen from Georgetown, Kentucky on 8/8/2012." [Id.]. When asked, Mr. Gavin said he bought the motorcycle in Kentucky from a "military man and he was giving it to his cousin." [Id.]. At this point, all three occupants of the Camry were arrested. [Id.].

The Defendant's first objection to the Memorandum and Recommendation asserts that the Magistrate Judge omitted "any findings

of fact or conclusions and law regarding the search of the car." [Doc. 20 at 1]. This objection is rejected for three reasons.

First, the Defendant has no legitimate expectation of privacy in the Camry to lodge a complaint about its search. Nowhere in his motion to suppress nor in his objections to Magistrate Judge Howell's written decision has the Defendant asserted a property or possessory interest in that car or any items in that car.[3] On the contrary, the Defendant was merely a passenger in the Camry and disavowed ownership or possession of the firearm found under his foot as well as the coins and scooter found in the trunk. Rakas v. Illinois, 439 U.S. 128 (1978) (a passenger normally has no legitimate expectation of privacy in a car in which he asserts neither a property interest nor a possessory interest and where he disclaims any interest in the seized object). Defendant, as a passenger, may have standing to contest the constitutionality of the vehicle's initial *stop,* Brendlin v. California, 551 U.S. 249 (2007), but he has no standing to contest the search of the vehicle without first claiming a privacy interest in the place searched or the thing seized. The burden is upon the Defendant to come

---

[3]When seeking to protect his Fourth Amendment rights, a defendant need not fear claiming a possessory interest in the place searched or the object seized for purposes of a motion to suppress. Doing so will not place him in an untenable situation because that information cannot later be used against him at trial. Simmons v. United States, 390 U.S. 377 (1968).

12

forward and show his legitimate privacy interests, without which, he cannot later be heard to complain. United States v. Rusher, 966 F.2d 868, 874 (4th Cir. 1992). The Defendant's facial attack of the search warrant, as it pertains to the search of the vehicle, is rejected since he has not carried his burden to show that he is an aggrieved person in the constitutional sense.[4]

Second, the search of the vehicle at the time of the stop was conducted lawfully by consent and could continue absent revocation of such consent. A consent search is a well-recognized exception to the Fourth Amendment's warrant requirement. Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973). Ms. Arnold consented to the officers' search of the Camry. The officers could rely on her actual or apparent authority since neither the Defendant nor Mr. Gavin objected to the officers' search. United States v. Matlock, 415 U.S. 164, 170 (1974) (third party with actual or apparent authority may consent to search); Illinois v. Rodriguez, 497 U.S. 177, 186 (1990) (search upheld as officers reasonably believed third party had actual or apparent authority to consent to search). Finally, Ms.

---

[4]This holds true as well for Defendant's claim that the warrant's authority to seize "[e]vidence of any other crime which may be located" is unconstitutional. [Docs. 13 at 5; 20 at 2 n.1]. While general, exploratory warrants that would facially permit the "rummaging in a person's belongings," Coolidge v. New Hampshire, 403 U.S. 443, 467 (1971), or the seizure of one thing under a warrant describing another, Stanford v. Texas, 379 U.S. 476, 485 (1965) are unconstitutional in violation of the particularity clause of the Fourth Amendment, Defendant has no standing to assert that claim here.

Arnold never revoked her consent. "A consent to search is not irrevocable, and thus if a person effectively revokes consent prior to the time the search is completed, then the police may not thereafter search in reliance upon the earlier consent." United States v. Lattimore, 87 F.3d 647, 651 (1996) (en banc). Presumably, the officers could continue to search the vehicle pursuant to Ms. Arnold's consent even after Stott obtained the search warrant and in lieu thereof.

Finally, and in addition to Ms. Arnold's consent, once the officers determined the Defendant was a previously convicted felon or learned the Honda motorcycle was reported as stolen, they had probable cause to search the vehicle under the "automobile exception" to the Fourth Amendment's warrant requirement. Maryland v. Dyson, 527 U.S. 465, 466 (1999). Having seized the gun from under the Defendant's foot, and having learned the Defendant's felon status, the officers had cause to believe Defendant was probably a felon in possession of a firearm or ammunition or both and were entitled to search the car. Likewise, having lawfully discovered the presence of the scooter in the trunk of the Camry and having learned that it was reported stolen, and having observed unclaimed silver coins and apparent burglary tools in close proximity, the officers had cause to believe that any one or all of the occupants of the car were

14

probably thieves and thus the officers were entitled to search the car. In either event, with probable cause to search the Camry, the officers could conduct a warrantless search of it "that is as thorough as a magistrate could authorize by warrant." United States v. Ross, 456 U.S. 798, 800 (1982). In addition, any such search includes the right to open and examine any containers or compartments found in the vehicle, California v. Acevedo, 500 U.S. 565 (1991), as well as any passenger's purse, bookbag, backpack or like item. Wyoming v. Houghton, 526 U.S. 295, 307 (1999). In short, while Stott's efforts at obtaining a search warrant for the Camry was laudatory and to be encouraged, under the circumstances of this case, it was not necessary. The Defendant's facial attack of the search warrant, as it pertains to the search of the vehicle, is rejected.

Turning now to the Defendant's second objection to the Memorandum and Recommendation, the Defendant claims the Magistrate Judge "did not attempt to explain why Mr. Stott's assertion that the evidence supplying probable cause to believe Mr. Doe committed a crime also supplied reason to believe that evidence of that crime would be found on his phone[.]: [Doc. 20 at 3].

Looking at the totality of the circumstances described in the warrant application, the issuing magistrate could reasonable conclude that the

Defendant had prior felony convictions and that he had his foot *on top of a gun* at the time Stotts asked him to exit the car.  A judicial officer tasked with reviewing search warrant applications presented by the police is allowed to – and encouraged to – employ his common sense.  The issuing magistrate in this matter was permitted to draw the reasonable, common sense, inference that the Defendant did know something about the gun found under his foot, despite his claim to the contrary.  Further given the plethora of offenses the Camry's occupants allegedly committed in the presence of Stotts — speeding at over 100 miles per hour, possessing an open container of alcohol in the car, littering, possessing a concealed weapon and burglary tools, being a felon in possession of a firearm, possessing stolen property — it is not an imaginary stretch to believe that the Defendant's cell phone might contain incriminating evidence in image form, as photographs or movies, documenting the firearm or the stolen property for purposes of sale.  Similarly, the evidence presented provided the Magistrate Judge with probable cause to believe that the Defendant's phone might contain incriminating evidence in written form, as texts or emails, documenting correspondence between the Defendant and others (possibly even the other occupants of the Camry) offering for sale the gun or the stolen property.  Or, as Magistrate Judge Howell pointed out, the

contents of Defendant's cell phone "might even defeat" the allegations Defendant possessed the firearm. [Doc. 19 at 12].

Officer Stotts swore, in his warrant application, based on his training and experience, "individuals often take pictures, videos, send text messages, and other uses of digital media which will implicate or document the crimes in which they take part of [sic]." [Doc. 13-1 at 5]. The issuing magistrate could reasonably believe Stott's statement to be true and that the Defendant's phone contained images of the stolen property, images of the gun, or even images of the Defendant with the stolen property or holding the gun.[5] The probable cause process "does not deal with hard certainties, but with probabilities. Long before the law of probabilities was articulated as such, practical people formulated certain common-sense conclusions about human behavior[.]" Gates, 462 U.S. at 231 (quoting with approval United States v. Cortez, 449 U.S. 411, 418 (1981), regarding the "particularized suspicion" standard applicable to the finding of probable cause).

---

[5]One court has labeled a defendant's photographic documentation of illicit acts a "trophy photo." United States v. Moya-Breton, 29 Fed.Appx. 839, 2009 WL 1524900, at *2 (10th Cir. 2009) (a "trophy photo" is a photo showing a person with money, drugs, and/or weapons taken as a souvenir or to show off).

With the popularity of social media sites like Twitter, Facebook, and Instagram, together with cell phones' capability to send text messages and pictures, common sense would lead a practical person to conclude that human behavior includes the making of flattering or unflattering "selfies."[6] That the Defendant's phone probably would contain evidence of the three crimes listed in the warrant application was within the issuing magistrate's realm of lawful consideration. The issuing magistrate, therefore, had a substantial basis for concluding that probable cause existed.

Based upon the Court's *de novo* review of this matter, and for the reasons stated herein, the Court determines that Magistrate Judge Howell's proposed findings and conclusions are correct and are adopted by this Court. Accordingly, the Court will accept his Memorandum and Recommendations and deny Defendant's suppression motion.

---

[6] The term "selfie" is the name given to a self-portrait photograph, "often snapped at odd angles with smartphones[,]" and "typically made to post on a social networking website (or sen[t] in a text message)[.]" Katy Steinmetz, "The Top 10 Buzzwords of 2012," Time, Dec. 4, 2012, http://newsfeed.time.com/2012/12/04/top-10-news-lists/slide/selfie.

**IT IS, THEREFORE, ORDERED** that the Magistrate Judge's Memorandum and Recommendations [Doc. 19] is **ACCEPTED** and the Defendant's Motion to Suppress [Doc. 13] is **DENIED.**

Signed: August 14, 2013

Martin Reidinger
United States District Judge